UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ABBAS HAMIDEH,

    Plaintiff,

v

CUYAHOGA COUNTY, AMY
MARQUIT RENWALD, individually,
and SARAH NEMASTIL, individually,

    Defendants.

Case No. 26-cv-1087

Hon.
Mag.

**DEMAND FOR JURY TRIAL**

_____

**AKEEL & VALENTINE, PLC**
SHEREEF H. AKEEL (P54345)
HASAN KAAKARLI (P81099)
HAYDEN E. PENDERGRASS
(P86888)
Attorneys for Plaintiff
888 W. Big Beaver Road., Suite 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com
hayden@akeelvalentine.com

**COMPLAINT AND JURY DEMAND**

**NOW COMES** Plaintiff, ABBAS HAMIDEH, by and through his

undersigned counsel, AKEEL & VALENTINE, PLC, and for his Complaint against

Defendants, CUYAHOGA COUNTY, AMY MARQUIT RENWALD, and SARAH NEMASTIL, states as follows:

## INTRODUCTION

1.      Abbas Hamideh devoted nearly twenty years to public service as a Protective Services Officer for Cuyahoga County.  He did his job faithfully.  He instructed his fellow officers as a Range Instructor.  He accumulated positive performance reviews year after year.  He was never formally disciplined.

2.      Outside work, Mr. Hamideh is a peaceful advocate for Palestinian human rights.  He has spoken on social media about Israel's military actions in Gaza, U.S. taxpayer funding of those actions, and the humanitarian crisis facing the Palestinian people.  These are matters of intense public debate in the United States and worldwide.

3.      Defendant Cuyahoga County suspended Mr. Hamideh without pay for approximately ten months.  The County did so because of his viewpoints and his speech on these matters of public concern.

4.      The County's stated reasons for disciplining Mr. Hamideh were pretext. The County initially indemnified and defended Mr. Hamideh against a civil rights lawsuit arising from the same workplace incident.  The County's own Pre-Disciplinary Conference Officer recommended only a 10-day suspension. The Ohio Unemployment Compensation Review Commission found no just cause for

2

discharge. A neutral Arbitrator later found no just cause to terminate Mr. Hamideh for the incident itself.

5. The Arbitrator nevertheless upheld a lesser form of discipline. He did so solely because of Mr. Hamideh's off-duty social media speech on Palestinian human rights.

6. The First Amendment protects public employees who speak as citizens on matters of public concern. The County violated that right. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968); *Connick v. Myers*, 461 U.S. 138, 142 (1983); *Bennett v. Metro. Gov't of Nashville & Davidson Cnty.*, 977 F.3d 530, 537 (6th Cir. 2020).

7. Plaintiff brings this action under 42 U.S.C. § 1983 for First Amendment retaliation. He seeks back pay, benefits, reinstatement to his prior position as Range Instructor, and compensation for the harm the County has caused him.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. Plaintiff's claims arise under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

9. Venue is proper under 28 U.S.C. § 1391(b). Defendant resides in this judicial district. A substantial part of the events giving rise to the claims occurred in the Northern District of Ohio.

3

10. Plaintiff's First Amendment retaliation claim arises independently of the parties' Collective Bargaining Agreement ("CBA"). The CBA contains no provision making arbitration the exclusive remedy for, or requiring exhaustion before, bringing claims independent of the CBA.

**PARTIES**

11. Plaintiff, Abbas Hamideh, is a resident of Mayfield Heights, Ohio. At all relevant times, the County employed him as a Protective Services Officer with the Cuyahoga County Sheriff's Department.

12. Defendant, Cuyahoga County, Ohio, is a political subdivision of the State of Ohio. The County operates the Cuyahoga County Sheriff's Department. The Sheriff's Department employs Protective Services Officers through its Protective Services Division.

13. Defendant, Amy Marquit Renwald, is the Director of Human Resources Employee and Labor Relations for Cuyahoga County. At all relevant times, she acted under color of state law and in her individual capacity. She was a final decisionmaker with respect to the termination of Mr. Hamideh's employment.

14. Defendant, Sarah Nemastil, is the Chief Human Resources Officer for Cuyahoga County. At all relevant times, she acted under color of state law and in her individual capacity. She was a final decisionmaker with respect to the termination of Mr. Hamideh's employment.

4

## FACTUAL ALLEGATIONS

15.     Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

**A. Abbas Hamideh: A Dedicated Public Servant with a Two-Decade Record of Excellence.**

16.     Abbas Hamideh became a Cuyahoga County Security Officer on January 8, 2007.

17.     Mr. Hamideh served nearly twenty years as a Protective Services Officer.  He spent most of those years assigned to the 16th floor of the Cuyahoga County Justice Center in Cleveland, Ohio.  That floor houses four courtrooms of the General Division of the Cuyahoga County Court of Common Pleas.

18.     Mr. Hamideh's duties included enforcing laws, rules, and regulations; apprehending violators; appearing in court when required; and securing and monitoring public traffic in County buildings.  He carried a firearm, pepper spray, and handcuffs.  He worked in full uniform.

19.     The County entrusted Mr. Hamideh with the Range Instructor position. He trained and qualified his fellow officers in the safe use of deadly weapons.  The position required annual background checks and specialized certifications.

20.     Mr. Hamideh's performance evaluations consistently met the County's expectations.   His supervisors described him as diligent, professional, and

responsive to the public.  Supervisors noted that he explained the rules to visitors, maintained order, and handled incidents with judgment and tact.

21.    Over nearly twenty years of service, Mr. Hamideh never received formal discipline.  His personnel file was free of written warnings and prior suspensions.

**B. Mr. Hamideh's Protected Activity for Palestinian Human Rights.**

22.    Outside of work, Mr. Hamideh has long advocated for the rights of Palestinian refugees.  He is active with Al-Awda, an organization that advocates for Palestinian refugees.

23.    Mr. Hamideh has also spoken about these matters on social media.  His speech has addressed Israel's military actions against Palestinians, the humanitarian and famine crises in Gaza, and the United States's funding of a foreign military using US tax payer dollars.

24.    These are matters of intense and widespread public concern.  The United States Government provides billions of dollars in military assistance to Israel each year.  American citizens fund that assistance through their taxes.  Tens of thousands of Palestinian civilians – many women and children – have been killed or maimed in Gaza.  Humanitarian organizations, governments, and international bodies have described the crisis in Gaza as among the gravest of our time.  These

issues have generated intense debate in the United States Congress, on college campuses, in newsrooms, on social media, and among ordinary Americans.

25. Mr. Hamideh made his social media posts as a private citizen. He made them off duty. They were not part of his job.

26. Mr. Hamideh's speech did not disrupt the operations of the Cuyahoga County Sheriff's Department.

**C. The August 28, 2024 Incident.**

27. On August 28, 2024, Mr. Hamideh was working his regular post on the 16th floor of the Justice Center. A sign directly behind his desk read: "No Recording Devices Permitted Unless Authorized by the Judge."

28. At approximately 11:56 a.m., Alec Popivker approached Mr. Hamideh's desk. Mr. Popivker had an appointment with his probation officer on another floor but had instead searched the building for Mr. Hamideh. Mr. Popivker raised his phone and began recording. He ignored the sign.

29. Mr. Popivker then hurled slurs at Mr. Hamideh. He called Mr. Hamideh a "hypocrite," a "liar," a "fucking Palestinian terrorist," a "fucking Hamas supporter," and a "fucking terrorist."

30. Section 11.19 of the Protective Services Manual prohibits the public from photographing County employees without their permission. The Cuyahoga County Court Towers do not allow recording without prior permission from a judge.

PSOs are empowered to intervene when individuals refuse to comply with the recording rule.

31.     At least one courtroom was in session on the 16th floor at the time.

32.     Mr. Hamideh asked Mr. Popivker to stop recording.  He explained the posted rule.  When Mr. Popivker refused to comply, Mr. Hamideh instructed him to leave the floor and called for Deputy backup over his radio, consistent with his training.

33.     Mr. Hamideh escorted Mr. Popivker onto the elevator.  Once inside, Mr. Popivker swung his arms at Mr. Hamideh and pushed him.  Mr. Hamideh attempted to restrain Mr. Popivker and called against over his radio for additional backup.

34.     Mr. Hamideh did not harm Mr. Popivker.  Mr. Popivker himself told investigators that he was not injured and did not need medical assistance.

35.     The City of Cleveland and the Cuyahoga County Prosecutors both decided criminal charges were not warranted against Mr. Hamideh.

36.     Mr. Popivker is a known political agitator.  He has a criminal record that includes charges of ethnic intimidation and a conviction for theft motivated by ethnicity involving the theft of a Palestinian banner.

**D. The County Stood by Mr. Hamideh in Federal Court.**

8

37.     On January 28, 2025, Mr. Popivker filed a lawsuit in this Court against Cuyahoga County, then-Sheriff Harold Pretel, and Mr. Hamideh.  The case is captioned *Popivker v. Cuyahoga County, Ohio, et al.*, Case No. 1:25-cv-00145-DAP.

38.     Mr. Popivker's Complaint alleged twelve causes of action arising from the August 28, 2024 incident, including First Amendment retaliation, Fourth Amendment excessive force, false arrest, and *Monell*[1] municipal liability claims.

39.     The County indemnified Mr. Hamideh.  The County held him harmless. The Cuyahoga County Prosecutor's Office defended the County, then-Sheriff Pretel, and Mr. Hamideh.

40.     On April 18, 2025, the Defendants, jointly and severally, made an Offer of Judgment under Rule 68 in the amount of $15,000.00, plus costs and reasonable attorneys' fees.  Mr. Popivker accepted the offer on April 25, 2025.  The parties stipulated to $10,500.00 in costs and fees on April 28, 2025.  The total settlement was approximately $25,500.

41.     The County admitted no wrongdoing in the settlement.

**E. The County Terminates Mr. Hamideh After Overriding Its Own Neutral Officers.**

42.     On August 29, 2024, the day after the Popivker incident, the County placed Mr. Hamideh on paid administrative leave.

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)

43.    The County's Internal Affairs Unit investigated Mr. Hamideh between September and December 2024.  Deputies Steven Bartczak and Jamie Bonnette led the investigation.  They interviewed Mr. Hamideh on November 25, 2024, three months after the incident.

44.    The Internal Affairs Unit draft report concluded that Mr. Hamideh had violated five departmental rules: Rule #30 (physical abuse of a member of the public), Rule #37 (committing a misdemeanor), Rule #48 (knowingly making a false or misleading statement), Rule #56 (exceeding authority), and Rule #59 (improper or negligent acts causing damage to property).

45.    Lieutenant Taharka Akhenaton, the most senior Protective Services Officer, reviewed the Internal Affairs report.  He recommended a 10-day suspension. His recommendation rested on the fact that no other PSO had ever received more severe discipline, even for more serious offenses.

46.    Rodney Harris, the County's neutral Pre-Disciplinary Conference Officer, also recommended a 10-day suspension.  Mr. Harris had 30 years of labor-relations experience and 10 years with the Sheriff's Department.  He had reviewed hundreds of disciplinary cases.

47.    In an April 16, 2025 email to his supervisor Brooke Deines, Mr. Harris wrote: "I spoke with Lt. Ankhenation [sic] on 03/24/25 and his recommendation was

for a 10-day suspension.  I am unaware of any comparable where an employee received more than a 10-day suspension for similar rule violations."

48.     The County's senior Human Resources officials, Defendants Amy Marquit Renwald and Sarah Nemastil, disregarded both recommendations.  They decided to terminate Mr. Hamideh.  They never spoke with Mr. Harris or Lt. Akhenaton about why the internal recommendation was so different.

49.     On April 30, 2025, Defendants issued a Removal Letter terminating Mr. Hamideh's employment effective May 1, 2025.  The termination came eight months after the August 28, 2024 incident, and within mere days of the Article 32 contractual 30-day deadline to issue discipline.

50.     Defendants decided to terminate Mr. Hamideh because of his viewpoints and speech on matters of public interest.

51.     Mr. Hamideh applied for and received unemployment compensation. The County appealed the determination three times and lost.

52.     After a two-day hearing, the Ohio Unemployment Compensation Review Commission Hearing Officer concluded that the County had discharged Mr. Hamideh without just cause.  The Hearing Officer found that Mr. Hamideh's actions were reasonable under the circumstances.  The Hearing Officer described Mr. Popivker's account of the incident as "dubious at best."

**F. The Arbitrator Finds No Just Cause for the Incident, But Mr. Hamideh is Punished Anyway Based on Mr. Hamideh's Protected Speech.**

11

53.     On May 1, 2025, the Ohio Patrolmen's Benevolent Association filed a grievance on Mr. Hamideh's behalf.  The grievance challenged the termination as lacking just cause.

54.     The grievance proceeded to arbitration before Arbitrator Jared D. Simmer.  Arbitrator Simmer held three days of evidentiary hearings on September 10, 2025, October 22, 2025, and October 23, 2025.  The parties filed post-hearing briefs on December 15, 2025.

55.     On March 9, 2026, Arbitrator Simmer issued his Award.

56.     The Arbitrator found that the County did not have just cause to terminate Mr. Hamideh.  He examined each of the five alleged rule violations, found they were unwarranted against Mr. Hamideh, and concluded that it was the County's failures that led to the incident in question.

57.     The Arbitrator identified multiple irregularities in the County's disciplinary process.  The County took eight months to decide to terminate Mr. Hamideh.  That decision came within mere days of the Article 32 contractual deadline.  No one at Human Resources consulted the neutral Pre-Disciplinary Conference Officer or the most senior PSO before deciding to terminate.

58.     The Arbitrator nevertheless did not award Mr. Hamideh make-whole relief.  Instead, he reduced Mr. Hamideh's discipline from termination to an unpaid

12

disciplinary suspension of equal duration – a period of nearly 10 months – ending on the date of the Award.  He expressly denied back pay.

59.     The Arbitrator imposed this lesser discipline solely because of Mr. Hamideh's off-duty social media speech.  He did not impose the lesser discipline based on any rule violation arising from the August 28, 2024 incident itself.

60.     The Arbitrator acknowledged in his Award that Mr. Hamideh's off-duty social media activity "didn't necessarily give the Department license to take disciplinary action against him."

61.     The Arbitrator nonetheless treated Mr. Hamideh's protected speech as "an extension of his responsibilities as a PSO."  He relied on the content of Mr. Hamideh's speech, including posts criticizing  the Israeli military's misconduct towards Palestinians to find that the County had just cause for some lesser form of discipline.

62.     The Arbitrator found that Mr. Hamideh's speech did not actually disrupt the operations of the Sheriff's Department.  Instead, the Arbitrator cited only "potential ramifications," risks of "future confrontations," and exposure to "negative publicity."

63.     The Arbitrator awarded that Mr. Hamideh would be reinstated as a PSO within 30 days of completing necessary paperwork.  The Arbitrator awarded the County discretion to set Mr. Hamideh's duty station and shift.  The Arbitrator also

awarded the County discretion not to restore Mr. Hamideh's prior position as Range Instructor.

64.    The unpaid suspension lasted from May 1, 2025 through March 9, 2026, a period of approximately ten months.  Mr. Hamideh received no pay, no benefits, no retirement contributions, and no accrued leave during that period.

### G. The Defendants' Stated Reasons for Disciplining Mr. Hamideh are Pretext for Retaliation Based on His Protected Speech.

65.    Defendants' stated reasons for disciplining Mr. Hamideh are false, shifting, and insufficient to justify the adverse action.  They are pretext for retaliation.

66.    First, the Arbitrator rejected each of the Defendants' proffered rule violations.  No rule violation supported termination.  None supported a lesser form of discipline either.

67.    Second, Defendants charged Mr. Hamideh with six rule violations, then dropped Rule #20 before discipline.  The Defendants' shifting rationale reveals uncertainty in its stated basis for discipline.

68.    Third, Defendants treated Mr. Hamideh dramatically more harshly than a similarly situated comparator.  PSO Leroy Hucks was charged with violating Rules #30 and #37, two of the same rules the County charged Mr. Hamideh with violating. Mr. Hucks pleaded guilty to a first-degree misdemeanor in Cleveland Municipal Court for slapping a 17-year-old girl on duty at a secure County facility.  Mr. Hucks

14

received only a 10-day suspension. Defendants terminated Mr. Hamideh, who was never charged with a crime, for alleged conduct that never resulted in any injury.

69. Fourth, the County's neutral Pre-Disciplinary Conference Officer recommended a 10-day suspension. The most senior PSO, Lt. Akhenaton, recommended a 10-day suspension. Defendants Renwald and Nemastil rejected both recommendations, without explanation, and without ever speaking to Mr. Harris or Lt. Akhenaton.

70. Fifth, the Defendants' disciplinary process was characterized by delay, deviation from progressive discipline, and procedural irregularity. Defendants waited eight months to impose discipline, acting only days before a contractual deadline. Defendants bypassed progressive discipline. Those irregularities suggest the outcome was predetermined.

71. Sixth, the County's own contemporaneous conduct contradicts its stated reasons or, at least, casts doubt as to whether that conduct motivated its decision to discipline Mr. Hamideh. The County defended Mr. Hamideh in federal court, indemnified him, paid the settlement, and admitted no wrongdoing in that case. An employer that defends an employee in civil litigation based on conduct cannot credibly terminate the employee for the very same conduct.

72. Seventh, the Ohio Unemployment Compensation Review Commission independently rejected the Defendants' stated reasons. After a two-day hearing, the

15

Hearing Officer found no just cause for the discharge and found Mr. Hamideh's conduct reasonable.

73. Finally, the Arbitrator confirmed the only reason the Defendants imposed any discipline on Mr. Hamideh was his protected social media speech.

**H. The County's Retaliation Continues After the Award.**

74. After the Award issued, the County attempted to impose additional conditions on Mr. Hamideh's reinstatement. The County demanded that Mr. Hamideh undergo a physical examination, drug screening, LEADS background check, and firearms retraining and qualification.

75. Arbitrator Simmer rejected those demands. He clarified that no additional reinstatement conditions are authorized by his Award.

## COUNT I

### FIRST AMENDMENT RETALIATION
### 42 U.S.C. § 1983; U.S. CONST. AMENDS. I, XIV
### Against Defendants Amy Marquit Renwald and Sarah Nemastil

76. Plaintiff re-alleges and incorporates Paragraphs 1-75 as though fully stated herein.

77. The First Amendment protects public employees who speak as private citizens on matters of public concern. *Pickering*, 391 U.S. at 568; *Connick*, 461 U.S. at 142 (1983); *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

78.    The Fourteenth Amendment makes the First Amendment enforceable against state and local governments.

79.    42 U.S.C. § 1983 creates a cause of action against a state actor that deprives a person of rights secured by the Constitution.

80.    Defendants Amy Marquit Renwald and Sarah Nemastil acted under color of state law at all relevant times.

81.    A First Amendment retaliation claim by a public employee has three elements: (1) the employee engaged in constitutionally protected speech; (2) the employer took an adverse action against the employee that would deter a person of ordinary firmness from continuing to engage in that speech; and (3) the protected speech was a substantial or motivating factor in the adverse action. *Bennett*, 977 F.3d at 537; *Lemaster v. Lawrence Cnty.*, 65 F.4th 302, 309 (6th Cir. 2023).

82.    Plaintiff engaged in protected speech.  He spoke publicly on Israel's military actions, the United States's funding of those actions, the Israel-Palestine conflict, and the rights of Palestinian refugees.

83.    These are matters of public concern.  Courts recognize that speech about U.S. foreign policy, military conflict, humanitarian crises, and political ideology lies at the core of the First Amendment. *Connick*, 461 U.S. at145; *Rankin v. McPherson*, 483 U.S. 378, 387 (1987).

17

84. Mr. Hamideh spoke as a private citizen.  He spoke off duty.  He spoke on his own social media accounts.  He did not speak pursuant to any official duty of a PSO.  *Garcetti*, 547 U.S. at 421.

85. Mr. Hamideh's interest in speaking on these matters of public concern substantially outweighs any interest the Defendants had in promoting workplace efficiency.  The Defendants offered no evidence that Mr. Hamideh's speech caused any actual disruption to Sheriff's Department operations.  The Arbitrator cited only potential and hypothetical future ramifications, not actual disruption.[2]  *Pickering*, 391 U.S.at 574.

86. Even sharp, controversial, or provocative speech on matters of public concern receives full First Amendment protection.  *Rankin*, 483 U.S. at 387; *Pickering*, 391 U.S. at 574.

87. The Defendants took materially adverse actions against Plaintiff.  It terminated Mr. Hamideh's employment on May 1, 2025.

88. The Defendants' termination, later reduced to an unpaid suspension, kept Mr. Hamideh out of work for approximately ten months with no pay, no benefits, no retirement contributions, and no accrued leave.

---

[2] As the Sixth Circuit makes clear, while a public employer need not wait for an *actual* disruption to discipline an employee, *Gillis v. Miller*, 845 F.3d 677, 687 (6th Cir. 2017), "its anticipation of disruption must be objectively reasonable." *Bennett*, 977 F.3d at 542-45; *see also Noble v. Cincinnati & Hamilton Cnty. Pub. Libr.*, 112 F.4th 373, 384 (6th Cir. 2024).

18

89. After the Award, the Defendants sought to impose additional barriers to Mr. Hamideh's reinstatement that the Arbitrator expressly rejected.

90. The Defendants retain discretion to refuse to restore Mr. Hamideh's position as Range Instructor, and to assign him to any duty station and shift the County chooses.

91. Termination is a materially adverse action as a matter of law. A nearly year-long unpaid suspension is a materially adverse action. The loss of a specialized position like Range Instructor is a materially adverse action. Each would deter a person of ordinary firmness from engaging in protected speech. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 303 (6th Cir. 2012); *Bennett*, 977 F.3d at 544.

92. Plaintiff's protected speech was a substantial and motivating factor in the Defendants' adverse actions against him. Indeed, his protected speech was the only reason the Defendants imposed any discipline at all.

93. The Arbitrator expressly found that the County lacked just cause to discipline Plaintiff for the August 28, 2024 incident itself.

94. The Arbitrator expressly grounded the lesser discipline of an unpaid suspension in Mr. Hamideh's off-duty social media speech about Israel and Palestinian rights.

95. The Defendants' stated reasons for disciplining Mr. Hamideh were pretext. The Defendants' reasons shifted over time. The Defendants charged Rule

19

violations that had no basis in fact and were insufficient to justify discharge.  The Defendants' own neutral Pre-Disciplinary Conference Officer and most senior PSO recommended only a 10-day suspension.  The Ohio Unemployment Compensation Review Commission found no just cause.  The Defendants treated a similarly situated comparator, PSO Leroy Hucks, dramatically more favorably for objectively more serious misconduct.  The Defendants bypassed progressive discipline without explanation.  The Defendants delayed for eight months before imposing discipline.

96.    The Defendants' contemporaneous conduct in the Popivker federal lawsuit further proves pretext.  The Defendants indemnified and defended Mr. Hamideh for the same conduct for which it purported to terminate him.  The Defendants cannot reconcile these two positions.

97.    The Defendants would not have imposed any discipline against Mr. Hamideh but for his protected speech.  *Lemaster*, 65 F.4th at 309.

98.    As a direct and proximate result of the Defendants' First Amendment retaliation, Mr. Hamideh has suffered substantial damages.  These damages include lost wages, lost overtime, lost retirement contributions, lost health benefits, lost uniform allowance, lost longevity pay, lost fitness incentives, lost holiday pay, and lost shift differentials.  They also include out-of-pocket expenses, including approximately $1,500 that Mr. Hamideh paid to maintain his Range Instructor

20

certification. They also include humiliation, embarrassment, anxiety, emotional distress, harm to reputation, and the chilling of his protected speech.

**COUNT II**
**MUNICIPAL LIABILITY (MONELL)**
**42 U.S.C. § 1983; U.S. CONST. AMENDS. I, XIV**
**Against Defendant Cuyahoga County**

99. Plaintiff re-alleges and incorporates all preceding paragraphs.

100. A local government is liable under 42 U.S.C. § 1983 when the execution of its policy or custom, whether made by its lawmakers or by those whose acts may fairly be said to represent official policy, inflicts a constitutional injury. *Monell*, 436 U.S. at 694.

101. The final decision to terminate Mr. Hamideh was made by officials with final policymaking authority for the County, including Amy E. Marquit Renwald, Director of Human Resources Employee and Labor Relations, and Sarah Nemastil, Chief Human Resources Officer for Cuyahoga County.

102. These officials executed the County's official policy or custom by terminating Plaintiff based on his protected speech. *Monell*, 436 U.S. at 694.

103. In the alternative, the County has failed to train, supervise, and discipline its officials in matters involving public employees' First Amendment rights. That failure amounts to deliberate indifference to constitutional rights and was a moving force behind the violation of Mr. Hamideh's rights. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

21

104. As a direct and proximate result of Defendant Cuyahoga County's unconstitutional policy or custom, Mr. Hamideh has suffered the same substantial damages alleged in Count I, including lost wages, lost benefits, out-of-pocket expenses, humiliation, embarrassment, anxiety, emotional distress, harm to reputation, and the chilling of his protected speech.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant Cuyahoga County for compensatory damages, equitable relief including reinstatement to his prior position as Range Instructor, costs, and reasonable attorneys' fees under 42 U.S.C. § 1988, along with such further relief as this Court deems just and equitable.

## REQUEST FOR RELIEF

105. Plaintiff respectfully requests that this Court enter the following relief:

    a.    Judgment in favor of Plaintiff and against Defendant Cuyahoga County, Ohio;

    b.    A declaratory judgment that Defendant Cuyahoga County retaliated against Plaintiff for protected speech in violation of the First and Fourteenth Amendments and 42 U.S.C. § 1983;

    c.    A declaratory judgment that Defendant Cuyahoga County breached its Collective Bargaining Agreement;

d.      Compensatory damages, including back pay, front pay, lost benefits, out-of-pocket expenses, emotional distress, humiliation, embarrassment, anxiety, and damage to reputation;

e.      Injunctive relief requiring Defendant Cuyahoga County to reinstate Plaintiff to his prior position as Range Instructor and to a duty station and shift consistent with his seniority;

f.      Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

g.      All other relief this Court deems just and proper.


Respectfully submitted,

**AKEEL & VALENTINE, PLC**

By: /s/ HASAN KAAKARLI
Shereef H. Akeel (P54345)
Hasan Kaakarli (P81099)
Hayden E. Pendergrass (P86888)
Attorneys for Plaintiff
888 W. Big Beaver Rd., Ste. 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com
hayden@akeelvalentine.com

Dated: May 11, 2026

23

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ABBAS HAMIDEH,

  Plaintiff,         Case No. 26-cv-1087

v             Hon.
              Mag.

CUYAHOGA COUNTY, AMY
MARQUIT RENWALD, individually,
and SARAH NEMASTIL, individually,

  Defendants.

_____

**AKEEL & VALENTINE, PLC**
SHEREEF H. AKEEL (P54345)
HASAN KAAKARLI (P81099)
HAYDEN E. PENDERGRASS
(P86888)
Attorneys for Plaintiff
888 W. Big Beaver Road., Suite 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com
hayden@akeelvalentine.com

---

## JURY DEMAND

24

**NOW COMES** Plaintiff, ABBAS HAMIDEH, by and through his undersigned counsel, AKEEL & VALENTINE, PLC, hereby demands a trial by jury of all the issues in this case.

Respectfully submitted,

**AKEEL & VALENTINE, PLC**

By: /s/ HASAN KAAKARLI
Shereef H. Akeel (P54345)
Hasan Kaakarli (P81099)
Hayden E. Pendergrass (P86888)
Attorneys for Plaintiff
888 W. Big Beaver Rd., Ste. 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com
hayden@akeelvalentine.com

Dated: May 11, 2026

25