**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Abbas Hamideh,** | ) | **CASE NO. 1:26 CV 1087** |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Cuyahoga County, et al.,** | ) | |
| | ) | **Memorandum Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

## INTRODUCTION

This matter is before the Court upon Defendant Cuyahoga County's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (Doc. 12). This is a Section 1983 case, alleging First Amendment retaliation. For the reasons that follow, Defendant Cuyahoga County's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## FACTS

The following facts come from plaintiff's complaint filed in this case and are presumed true for purposes of ruling on the pending motion. (Doc. 1.) Plaintiff Abbas Hamideh ("Plaintiff") became a Cuyahoga County Security Officer on January 8, 2007. He served nearly twenty years as a Protective Services Officer ("PSO") at the Cuyahoga County Justice Center ("Justice Center") in Cleveland, Ohio. His duties included enforcing laws, rules, and regulations, apprehending violators, appearing in court when required, and securing and monitoring public traffic in county buildings. Plaintiff also worked as a Range Instructor, where he trained and qualified his fellow officers in the safe use of deadly weapons. The position required annual background checks and specialized certifications.

Plaintiff's performance evaluations consistently met defendant Cuyahoga County's (the "County") expectations. His supervisors described him as diligent, professional, and responsive to the public. Supervisors noted that he explained the rules to visitors, maintained order, and handled incidents with judgment and tact. Over nearly twenty years of service, Plaintiff never received formal discipline. His personnel file was free of written warnings and prior suspensions.

While off duty, Plaintiff has long advocated for the rights of Palestinian refugees. He is active with Al-Awda, an organization that advocates for Palestinian refugees. He has also posted on social media about matters concerning Palestinians, including his views on Israel's military actions against Palestinians, humanitarian and famine crises in Gaza, and the United States's funding of a foreign military using U.S. tax-payer dollars. (Doc. 1 ¶¶ 22–23.)

On August 28, 2024, Plaintiff was working his regular post on the 16th floor of the Justice Center. A sign directly behind his desk read: "No Recording Devices Permitted Unless Authorized by the Judge." (*Id.* ¶ 27.) At approximately 11:56 a.m., Alec Popivker ("Popivker") approached Plaintiff, raised his phone, and—despite the sign prohibiting it—began recording. Plaintiff alleges that Popivker proceeded to verbally berate him, calling him a "hypocrite," a "liar," a "fucking Palestinian terrorist," a "fucking Hamas supporter," and a "fucking terrorist." (*Id.* ¶ 29.)

As an on-duty PSO, Plaintiff was empowered to intervene when individuals refuse to comply with the recording rule. Plaintiff asked Popivker to stop recording and explained the posted rule. When Popivker refused to comply, Plaintiff instructed him to leave the floor and radioed for backup, consistent with his training.

Plaintiff then escorted Popivker onto the elevator. Once inside, Popivker swung his arms at Plaintiff and pushed him. Plaintiff attempted to restrain Popivker and radioed again for backup.

According to Plaintiff, he did not harm Popivker, who himself told investigators that he was not injured and did not need medical assistance. Further, the City of Cleveland and the County both decided criminal charges were not warranted against Plaintiff.[1]

The next day, the County placed Plaintiff on paid administrative leave. The County's Internal Affairs Unit investigated Plaintiff between September and December 2024. Deputies Steven Bartczak and Jamie Bonnette led the investigation. They concluded that Plaintiff had violated five departmental rules: Rule #30 (physical abuse of a member of the public), Rule #37 (committing a misdemeanor), Rule #48 (knowingly making a false or misleading statement), Rule #56 (exceeding authority), and Rule #59 (improper or negligent acts causing damage to property).

Lieutenant Taharka Akhenaton, the most senior PSO, reviewed the Internal Affairs report. He recommended a 10-day suspension. Rodney Harris ("Harris"), the County's neutral Pre-Disciplinary Conference Officer, also recommended a 10-day suspension. In an April 16, 2025 email to his supervisor, Harris wrote: "I spoke with Lt. Ankhenation [sic] on 03/24/25 and his recommendation was for a 10-day suspension. I am unaware of any comparable where an employee received more than a 10-day suspension for similar rule violations." (*Id.* ¶ 47.)

The County's senior Human Resources officials, Defendants Amy Marquit Renwald ("Marquit Renwald") and Sarah Nemastil ("Nemastil") (together, the "HR Defendants"), disregarded both of these recommendations. On April 30, 2025, the HR Defendants issued a

---

[1] Popivker subsequently sued the County, then-Sheriff Harold Pretel, and Plaintiff, alleging twelve causes of action arising from the August 28, 2024 incident, including First Amendment retaliation, Fourth Amendment excessive force, false arrest, and municipal liability claims. The County defended Plaintiff in that lawsuit, which was resolved through a settlement.

Removal Letter terminating Plaintiff's employment effective May 1, 2025. According to Plaintiff, the HR Defendants never conferred with Mr. Harris or Lt. Akhenaton about their recommendation for a less serious 10-day suspension.

On May 1, 2025, the Ohio Patrolmen's Benevolent Association filed a grievance on Plaintiff's behalf. The grievance challenged the termination as lacking just cause. The grievance proceeded to arbitration before Arbitrator Jared D. Simmer ("Arbitrator Simmer"), who found that the County did not have just cause to terminate Plaintiff.

Nevertheless, Arbitrator Simmer did not award Plaintiff make-whole relief. Instead, he reduced Plaintiff's discipline from termination to an unpaid disciplinary suspension of equal duration—a period of nearly 10 months—ending on the date of the award. He expressly denied back pay. He also awarded Plaintiff's reinstatement as a PSO within 30 days of completing necessary paperwork. He awarded the County discretion to set Plaintiff's duty station and shift. He also awarded the County discretion not to restore Plaintiff's position as a Range Instructor.

On May 11, 2026, Plaintiff filed the instant Section 1983 suit, alleging claims of First Amendment retaliation against the HR Defendants and municipal liability against the County. He seeks compensatory damages and injunctive relief. The County has filed a motion to dismiss, arguing that Plaintiff has failed to state a *Monell*[2] claim against it. Plaintiff opposes the motion. The County did not file a reply in support of its motion during the time afforded by the Local Rules. LR 7.1(e).

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

**STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 335 F. App'x 587, 588 (6th Cir. 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). That said, the complaint must set forth "more than the bare assertion of legal conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). The Court is not required to accept as true legal conclusions or unwarranted factual inferences. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint that merely offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*

**DISCUSSION**

To state a Section 1983 claim for First Amendment retaliation, a plaintiff must allege that (1) he or she was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused him or her to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights; and (4) that he or she was deprived of a right secured by the Federal Constitution or laws of the United States by a person acting under color of state law." *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010).

A municipality can be liable under Section 1983 when an official "policy or custom" caused a violation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 695. A municipality cannot be held liable solely because it employs a tortfeasor. *Id.* at 691. Rather, an identified policy or custom must be the "moving force" behind the constitutional violation. *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 2006). The plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Id.* (internal quotation marks and citations omitted). A plaintiff can allege an illegal policy or custom by pleading facts suggesting one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Here, Plaintiff contends (1) that the HR Defendants were final decisionmakers on behalf of the County and that they ratified their own illegal actions or, alternatively, (2) that the County failed

to properly train and/or supervise its human resource employees on public employees' First Amendment rights. Notably, the County does not address—and downright ignores—Plaintiff's ratification theory. The County's motion is limited to contending that Plaintiff has failed to allege sufficient facts to maintain a claim based on a failure to train theory. But because the County summarily contends that Plaintiff fails to state a municipal liability claim against it and seeks dismissal on that basis, this Court will address the sufficiency of both stated theories.

**A. Ratification by Final Decisionmaker**

"The requirement that a municipality's wrongful actions be a 'policy' is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials." *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994). "It is meant to distinguish those injuries for which 'the government as an entity is responsible under § 1983,' *Monell*, 436 U.S. at 694, from those injuries for which the government should not be held accountable." *Id.* "*Monell* is a case about responsibility." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478, 106 (1986).

Accordingly, "a policy or custom does not have to be written law; it can be created 'by those whose edicts or acts may fairly be said to represent official policy.'" *Paige*, 614 F.3d at 284 (citing *Monell*, 436 U.S. at 694); *see also Pembaur*, 475 U.S. at 483 ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). Moreover, the alleged adverse action need not be part of a pattern because "municipal liability may be imposed for a single decision by municipal policymakers." *Pembaur*, 475 U.S. at 480.

Here, Plaintiff alleges that the HR Defendants disregarded recommendations for a lighter punishment *(e.g.*, a 10-day suspension) and instead terminated Plaintiff because of his protected speech. He further alleges that as the Director of Human Resources Employee and Labor Relations and the Chief Human Resource Officer, the HR Defendants were final decisionmakers for the County with respect to the decision to terminate Plaintiff's employment. The Sixth Circuit has found that a decision that is either "made or approved by a final policy-maker of the [municipality] . . . [is] sufficient to trigger municipal liability under *Monell*." *Meyers*, 14 F.3d at 1117 ("If the decision to punish [plaintiff] for exercising his constitutional rights was made by the 'government's authorized decisionmakers' the City is responsible."); *see also Paige*, 614 F.3d at 284 ("Under *Monell* and *Pembaur*, [defendant's] authority to create policy for the [municipality] means that her actions can represent official policy.").

Plaintiff's allegations are sufficient to meet the requirements of *Monell* at the pleading stage of this case. Defendant Cuyahoga County's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss is DENIED as to Plaintiff's *Monell* claim based on a theory of ratification.

**B. Policy of Inadequate Training or Supervision**

To maintain a *Monell* claim against a municipality based on inadequate training or supervision, a plaintiff must establish that: (1) the city's training program was inadequate for the tasks that officers must perform; (2) the inadequacy was the result of the city's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). The Sixth Circuit has described the second and third elements as "demanding." *Gambrel v. Knox Cnty.*, 25 F.4th 391, 408 (6th Cir. 2022).

To establish that a municipality acted with "deliberate indifference" to the fact that its inadequate training or supervision would lead its agents to violate constitutional rights, a plaintiff must prove that the violation of a clearly established right was a "known or obvious consequence" of the lack of training or supervision. *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410)). "This standard usually requires proof that a municipality's employees engaged in a 'pattern of similar constitutional violations' separate from the conduct that harmed the plaintiff." *Id.* (quoting *Connick*, 563 U.S. at 62). But the Supreme Court has left open the possibility that, in a "narrow range of circumstances," a plaintiff might prove deliberate indifference using only the single instance of unconstitutional conduct against the plaintiff if the risk of the constitutional violation is so obvious or foreseeable that it amounts to deliberate indifference for the municipality to fail to prepare its officials for it. *Connick*, 563 U.S. at 63–64.

Further, establishing that the inadequate training was closely related to or actually caused the injury, "requires proof of the two types of causation from the common law of torts: but-for (or factual) causation and proximate causation." *Id.* (citing *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 608–11 (6th Cir. 2007)).

Here, Plaintiff pleads only conclusory allegations that "the County has failed to train, supervise, and discipline its officials in matters involving public employees' First Amendment rights," that "[t]hat failure amounts to deliberate indifference to constitutional rights and was a moving force behind the violation of [Plaintiff's] rights." (Doc. 1 ¶ 103.) These conclusory allegations that do little more than recite the elements of the claim are insufficient to plead a plausible claim. *See Wright v. Louisville Metro Gov't*, 144 F.4th 817, 827 (6th Cir. 2025) ("When stripped of the legal conclusions, the Complaint contains no factual allegations indicating what the

training policies were, why they were inadequate, how the city was deliberately indifferent, or how the failures related to the [plaintiffs'] injuries." (internal quotation marks and citation omitted)).

In his opposition brief, Plaintiff contends that his Complaint, when read as a whole, contains sufficient factual allegations to maintain his *Monell* claim based on a theory of inadequate training. This Court is not convinced. Even reading the Complaint in the light most favorable to Plaintiff, there are no factual allegations that address specific training deficiencies or tie a lack of training to any of Defendants' actions.

Even further, there are no factual allegations of a pattern of similar constitutional violations—which Plaintiff acknowledges. Nor are there factual allegations suggesting that the alleged violation of Plaintiff's First Amendment rights was so obvious or foreseeable that inadequate training amounts to deliberate indifference.

In his opposition brief, Plaintiff asks this Court to accept that "[t]he County knows to a moral certainty that its employees will speak as citizens on contested public issues, and that complaints about that speech will reach the officials who decide discipline" and that "[d]eciding whether to punish an employee for speech is the core duty of the officials who decide to discipline." (Doc. 16, at 22–23.) Fatally, however, there are no factual allegations in his Complaint that support this contention.[3]

---

[3] For example, Plaintiff contends that "[t]he Sixth Circuit has held that a municipality's failure to provide 'any training on key duties with direct impact on the constitutional rights of citizens' supports liability without a prior pattern" and that "[i]t has applied that rule to First Amendment training." (Doc. 16, at 22 (first citing *Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006), then citing *Novak v. City of Parma*, 33 F.4th 296, 309–10 (6th Cir. 2022)).) True as these legal propositions may be, Plaintiff's Complaint fails to allege that either of the HR Defendants' "key duties" included deciding whether to discipline employees for their off-duty speech and that the County then failed to provide any training on this key duty. *See Novak*, 33 F.4th at 309–10

For all the aforementioned reasons, Plaintiff has failed to sufficiently state a *Monell* claim based on a theory of inadequate training. Defendant Cuyahoga County's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss is GRANTED IN PART and Plaintiff's *Monell* claim based on a theory of inadequate training is DISMISSED.[4]

**CONCLUSION**

For the foregoing reasons, Defendant Cuyahoga County's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

PATRICIA A. GAUGHAN
United States District Judge

Date: 10/6/2026

---

(noting that "the intricacies of parody are not part of the officers' 'key duties' the way protest management is").

[4] On the last page of his opposition brief, Plaintiff requests leave to amend, "if this Court finds the Complaint deficient in any way." (Doc. 16, at 26.) Plaintiff has not submitted a proposed amendment or articulated facts which would be included in the suggested amendment. On this basis, a request for leave to amend is properly denied. As the Sixth Circuit has explained:

> [A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of [Federal Rule of Civil Procedure] 15(a). A request for leave to amend "almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.

*Louisiana. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (citations omitted).